Ronald Abramson
David G. Liston
Ari J. Jaffess
Alex G. Patchen
**LEWIS BAACH pllc KAUFMANN MIDDLEMISS**
The Chrysler Building
405 Lexington Avenue, 62nd Floor
New York, New York 10174

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL PHILIP KAUFMAN,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | No.: _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT FOR PATENT INFRINGEMENT</u>

Plaintiff MICHAEL PHILIP KAUFMAN ("Plaintiff"), as and for his

complaint against defendant, Microsoft Corporation ("Microsoft"), alleges as

follows:

## <u>NATURE OF THE CASE</u>

1.      This is an action against Microsoft for infringement of U.S. Patent No.

7,885,981 (the "'981 Patent"), owned by Plaintiff, by Microsoft's "ASP.NET

Dynamic Data," "ASP.NET MVC," and similar software facilities built into the Microsoft® Windows® Operating System ("Windows"), and otherwise sold, licensed and/or distributed by Microsoft.

## THE PARTIES

2.      Plaintiff is an individual who resides in this district.

3.      Upon information and belief, Microsoft Corporation ("Microsoft") is a Washington corporation with its principal place of business at 1 Microsoft Way, Redmond, Washington 98052. Microsoft may be served with process through its registered agent, Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

## JURISDICTION AND VENUE

4.      Plaintiff brings this action for patent infringement under 35 U.S.C. § 271 *et seq.* This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

5.      This Court has personal jurisdiction over Microsoft under Rule 4(k)(1)(A) & (C), Fed. R. Civ. P., the laws of the State of New York, including New York C.P.L.R. §§ 301, 302(a)(1)-(4), and 28 U.S.C. § 1694.

6.      Jurisdiction over Microsoft exists in this district under New York CPLR 302(a) and Rule 4(k)(1)(A), Fed. R. Civ. P., in that (i) Microsoft transacts business within New York and enters into contracts to supply goods and services

within New York that give rise to the infringement alleged herein; (ii) Microsoft itself commits infringing acts within New York, as hereinafter alleged; (iii) Microsoft acts outside New York to induce acts within New York alleged herein to constitute direct infringement, regularly does and solicits business within New York, engages in persistent conduct in New York, including litigation, wherein, for example, Microsoft itself has filed a declaratory judgment lawsuit in this District (*Microsoft Corp. v. Datatern, Inc.*, No. 11-cv-2365), derives substantial revenues from the goods used and services rendered in New York in connection with such induced infringement and should reasonably expect such inducement to have consequences in New York and derives substantial therefrom in interstate commerce; and (iv) Microsoft owns, uses, and/or possesses real property situated within New York, including without limitation consumer retail locations and corporate offices in New York.

7.     Jurisdiction over Microsoft exists in this district under 28 U.S.C. § 1694 and Rule 4(k)(1)(C), Fed. R. Civ. P., in that Microsoft has a regular and established place of business in this district, including without limitation retail outlets and corporate offices.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), and (d) and 1400(b). Microsoft is the sole defendant and is deemed a resident of New York under 28 U.S.C. § 1391(c) (in that Microsoft is a

corporation subject to personal jurisdiction in this district), and therefore venue is proper with respect to Microsoft under 28 U.S.C. § 1391(b)(1). Substantial parts of the infringement alleged herein have occurred in this district, making venue proper with respect to Microsoft under 28 U.S.C. § 1391(b)(2). Microsoft has a regular and established place of business in this district, including without limitation retail outlets and corporate offices, and on information and belief has committed acts of infringement as alleged herein, in this district, making venue proper under the second clause of 28 U.S.C. § 1400(b). Furthermore, pursuant to 28 U.S.C. § 1391(c), Microsoft is deemed to reside in this judicial district by reason of being subject to jurisdiction in this district, making venue proper with respect to Microsoft under the first clause of 28 U.S.C. § 1400(b).

## ALLEGATIONS COMMON TO ALL COUNTS

9.     Plaintiff, who had considerable experience in designing enterprise-level database software applications, saw a need for an automated technique to avoid repetitive, tedious coding when developing software applications to work with relational databases, which could allow a user access to create, read, update and/or delete the data, while at the same time preserving and enforcing the complex dependencies among data tabulations that exist in massive enterprise-level databases. In response to this need, he invented solutions to such problems, which provided the ability to automatically create a software application based on

an existing relational database schema, table definitions, data model, or data dictionary. Plaintiff's invention provided a mechanism to create an end-user application that provided full access to the contents of a relational database, allowed for easy user navigation from table to table within the database, allowed data to be updated and modified, incorporated mechanisms to maintain the integrity of the entered data, preventing users of any one table within the database from corrupting relationships to other tables – in which all of these mechanisms were extensible to any relational database, regardless of size or complexity. The result is an application that solves a pressing business need for useful access to the data in the database, at a vastly reduced development cost compared to the hand-coded approach under the prior art, making practical a range of solutions for organizations with large data needs that would not theretofore have been feasible. Plaintiff filed and obtained U.S. patents for such solutions, including without limitation the '981 Patent.

10.    Microsoft develops, manufactures, licenses, supports and sells computer software, consumer electronics and personal computers and services. Microsoft is the world's largest software maker by revenue.

11.    Subsequent to Plaintiff's invention, and the issuance of the '981 Patent, Microsoft began releasing development tools for its .NET Framework software platform which, like Plaintiff's invention, automate the task of generating

a software application based on a database schema, table definitions, data model, or data dictionary. These tools include without limitation facilities bearing various product names applied by Microsoft, such as "Dynamic Data," "ASP.NET Dynamic Data," "ASP.NET Dynamic Data Scaffolding," "ASP.NET MVC," "ASP.NET MVC Scaffolding," "LightSwitch," and various other designations. On information and belief, for the past several years, these tools, referred to herein as the "Accused Products," have been built into most if not all copies of Microsoft's ASP.NET and .NET Framework (which are in turn embedded within all Windows distributions as distributed, sold, and/or licensed by Microsoft, and/or provided by Microsoft as a free download in connection with Windows), or sold as separate products.

12.    On information and belief, the Accused Products are widely used, in this district and elsewhere in the U.S., by Microsoft's customers, including without limitation its largest enterprise customers, and by Microsoft itself, to develop data-driven software applications of all types.

13.    Microsoft has undertaken the above-described acts with regard to the Accused Products, without authorization by Plaintiff, within the United States, during the term of the '981 Patent.

14.    Pursuant to 35 U.S.C. § 287, the filing of this action for infringement constitutes notice of infringement. In addition, on information and belief,

Microsoft had pre-suit knowledge of Plaintiff's patents and patent applications at least by reason of their citation by Microsoft and/or against Microsoft in various U.S. and foreign patent applications, including without limitation Microsoft's European Patent Applications EP2033124 (citation date Dec. 17, 2009), EP 12 793 468 (citation date March 16, 2015), U.S. Patent Application 13/152,251 (citation date April 30, 2015), and U.S. Patent No. 8,396,848 (citation date January 25, 2007). Since these instances of notice occurred both before and after the issuance of the '981 Patent, on information and belief, by reason of the foregoing, as well as Microsoft's extensive involvement in the field of Plaintiff's patents and patent applications, Plaintiff alleges that Microsoft knew or should have known of the '981 Patent at or about its issue date and in any case prior to the commencement of this action. The earliest such date by which Microsoft had knowledge of the '981 Patent is herein referred to as the "Notice Date."

## COUNT I
## (DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,885,981)

15.    Plaintiff realleges and incorporates paragraphs 1-13 above by reference.

16.    Plaintiff owns and at all times relevant hereto has owned the entire interest in the '981 Patent, which issued on February 8, 2011.

17.    The '981 Patent claims methods, and corresponding embodiments in the form of systems, and recorded software, for automatically generating a user interface for arbitrarily complex or large databases, based on a database schema, also sometimes referred to as the database's data model, or its data dictionary.

18.    The Accused Products, for example ASP.NET Dynamic Data, incorporate each and every characteristic recited in claims 1 (method), 4 (system), and 5 (recorded software) of the '981 Patent, literally and/or under the doctrine of equivalents.

19.    Per claim 1 of the '981 patent ("A method for operating a server"), ASP.NET Dynamic Data delivers a Web application – therefore necessitating the operation of a server as claimed, *e.g.*, in claim 1 of the '981 patent. Source: https://msdn.microsoft.com/en-us/library/ee845452(v=VS.100).aspx.

20.    Further per claim 1 (the server comprising "a processor for automatically generating an end-user interface for working with the data within a relational database"), "Dynamic Data…*automatically generate[s] Web pages for each table in the database. Scaffolding lets you create a functional Web site for viewing and editing data based on the schema of the data*." Source: https://msdn.microsoft.com/en-us/library/ee845452(v=VS.100).aspx (emphasis added).

21.    Further per claim 1 ("defined within a relational DBMS whose data is stored in machine-readable media and which is accessible to said server"), Dynamic Data uses either LINQ to SQL or the ADO.NET Entity Framework to generate a data model from a *connected database*. https://msdn.microsoft.com/en-us/library/cc488469.aspx. "In LINQ to SQL, the data model of a relational database is mapped to an object model expressed in the programming language of the developer." https://msdn.microsoft.com/en-us/library/bb386976.aspx. "Entity Framework (EF) is an object-relational mapper that enables .NET developers to work with relational data using domain-specific objects." https://msdn.microsoft.com/en-us/data/ef.

22.    Further per claim 1 ("wherein said relational database comprises a plurality of tables, constraints and relationships stored in said DBMS in accordance with a data model comprising said tables and their column-complements and datatypes, said constraints, and the relationships across said tables"), "the [Dynamic Data] data model represents the information that is in a database and how the items in the database are related to each other. . . At run time, Dynamic Data automatically extracts information about the data model, such as data field properties. . . To render the UI, [Dynamic Data] uses the following information:

- Information about associations between tables is used to display foreign-key columns and navigate between tables.

- Data-type information is used to add validation and to select the appropriate field templates for a data field. For example, information about columns that allow null values can be used to determine whether a data field is required. Length information can be used to restrict the maximum length of user's text input. The data type of a field is used to determine which field template to use to render the UI for that field."

Source: https://msdn.microsoft.com/en-us/library/ee225428.aspx.

23.    Further per claim 1 ("wherein said relational database may be of any arbitrary size or complexity"), Dynamic Data has no stated limitations on the size or complexity of supported databases.

24.    Further per claim 1 ("providing an output stream from said server, for user display and input devices"), ASP.NET Dynamic Data delivers a Web application – therefore necessitating the delivery of an output stream (*i.e.*, HTML over HTTP) from a Web server to a client Web browser (for user display and subsequent input). Source: https://msdn.microsoft.com/en-us/library/ee845452(v=VS.100).aspx.

25.    Further per claim 1 ("defining a user interface paradigm comprising a set of modes for interacting with a given database table, said modes comprising create, retrieve, update and delete, and a corresponding display format for each

mode"), "Page templates are Web pages that render data from any table in the database. Dynamic Data includes page templates for different views of data." Source: https://msdn.microsoft.com/enus/library/ee845452(v=VS.100).aspx. "Scaffolding refers to the Dynamic Data elements that automatically generate Web pages for each table in a database. These auto-generated Web pages provide create, read, update and delete (CRUD) operations for each table. . . Dynamic Data uses page templates to display tables and to provide CRUD capabilities." Source: https://msdn.microsoft.com/en-us/ee377606(v=vs.100).

26.    Further per claim 1 ("causing said server to scan said database and apply a body of rules to determine the table structures, constraints and relationships of said data model"), "[The d]ata source mapping layer . . . contains elements that are part of the CLR but are used by Dynamic Data. These elements are technologies such as LINQ to SQL and ADO.NET Entity Framework *that are used to generate data models*. . . At run time, Dynamic Data automatically extracts metadata information from the data model, such as data field properties." Source: https://msdn.microsoft.com/en-us/library/ee845452(v=VS.100).aspx (emphasis added).

27.    Further per claim 1 ("store representations thereof in machine-readable media accessible to said server"), "Dynamic Data architecture contains . . . [a d]ata layer, which contains the data model that represents the

database entities as CLR types." Source: https://msdn.microsoft.com/en-us/library/ee845452(v=VS.100).aspx.

28.     Further per claim 1, ("causing said server to use said representations to construct a corresponding client application for access through said user display and input devices"), "ASP.NET Dynamic Data lets you create…data-driven Web applications by inferring at run time the appearance and behavior of data entities from the database schema and deriving UI behavior from it. . . When scaffolding is enabled, ASP.NET analyzes the data model and generates Web pages dynamically based on the metadata information. These auto-generated Web pages provide CRUD capabilities for each table." Source: https://msdn.microsoft.com/en-us/library/ee845452(v=VS.100).aspx.

29.     Further per claim 1, ("wherein said client application provides a connection to said database"), the generated Web pages operate on the data within the underlying database through a client-application connection to same.

30.     Further per claim 1, ("provides displays of the table contents of said database for each of said modes in accordance with the display formats of said paradigm"), "Page templates are Web pages that render data from any table in the database. Dynamic Data includes page templates for different views of data." Source: https://msdn.microsoft.com/en-us/library/ee845452(v=VS.100).aspx.

"Dynamic Data uses page templates to display tables and to provide CRUD capabilities." Source: https://msdn.microsoft.com/en-us/ee377606(v=vs.100).

31.    Further per claim 1, ("integrates into each said mode display processes for representing, navigating, and managing said relationships across tables"), "At run time, Dynamic Data automatically extracts metadata information from the data model…[and f]rom this information, it infers how to create UI for displaying and editing data." "*Information about associations between tables is used to display foreign-key columns and to support navigation between tables*." Source: https://msdn.microsoft.com/en-us/library/ee225428.aspx (emphasis added).

32.    Further per claim 1, ("for selecting among said modes"), ". . . auto-generated Web pages provide the capability to *display, insert, delete, and edit* data for each table. . . Click the Delete button to delete a record from the table. . . Click the page numbers to navigate through the records. . . Click the Edit button to modify a record in the table. . . Change the values and then click Update, or click Cancel to cancel the edit operation. . . At the bottom of the page, click the Insert new item button to create a new record." Source: https://msdn.microsoft.com/en-us/enus/library/cc488469.aspx (emphasis added).

33.    Further per claim 1, ("for navigating across said tables"), ". . . auto-generated Web pages provide the capability to display, insert, delete, and edit data

*for each table*. . . Click one of the tables. For example, click the Products table. . . A page is displayed that contains the data from the table that you selected." Source: https://msdn.microsoft.com/en-us/library/cc488469.aspx (emphasis added).

34.     Further per claim 1, ("interacting in accordance the selected mode with the data in the tables that are reached by said navigation"), the user interacts with the data in tables via "*predefined pages to perform CRUD operations*." Source: https://msdn.microsoft.com/en-us/library/ee845452(v=VS.100).aspx (emphasis added).

35.     Further per claim 1 ("while observing and enforcing relational interdependencies among data across said tables"), "[Dynamic Data] will choose the appropriate field template based on the field's type." "[Foreign Key fields use a] HyperLink control that links to the associated entity in display mode, or a DropDownList control in edit mode." "[Dynamic Data d]isplays foreign-key columns…using meaningful textual representations (rather than displaying a numeric id value) that are rendered as hyperlinks. Clicking a link navigates to a scaffolded page for the parent table. In edit mode, foreign keys are rendered as drop-down lists that let a user modify the foreign-key value for that record." "[Dynamic Data t]urns one-to-many relationship columns…into hyperlinks that navigate to a scaffolded page for that table." Source: http://devproconnections.com/net-framework/introduction-dynamic-data.

36.     As alleged in the foregoing paragraphs, a user of Dynamic Data performs each and every step of the method that is claimed in claim 1 of the '981 Patent.

37.     Microsoft may have developed other software implementing the same or similar functionality as that of Dynamic Data, ASP.NET Dynamic Data, ASP.NET Dynamic Data Scaffolding, ASP.NET MVC, ASP.NET MVC Scaffolding, LightSwitch, etc., which similarly perform each and every step in claim 1 of the '981 patent. All such other software is also included within the scope of Accused Products herein. Plaintiff reserves the right to discover and pursue claims of infringement regarding all such additional infringing software.

38.     Microsoft has and continues to directly infringe the '981 patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, through its own internal use of Accused Products ("Internal Use"), whereby Microsoft practices each and every step of the method of claim 1 of the '981 Patent. On information and belief, a substantial volume of Microsoft's Internal Use of the Accused Products has taken place and continues to take place in this district.

39.     Microsoft has and continues to directly infringe the '981 patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by, in the course of its Internal Use, combining the server and each of the machine-readable

routines recited in claim 4 of the '981 Patent, to "make" systems within the scope of claim 4.

40.    Microsoft has and continues to directly infringe the '981 patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by, in the courts of its Internal Use, "using" said systems in accordance with claim 4 of the '981 Patent.

41.    Microsoft has and continues to directly infringe the '981 patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by recording copies of the Accused Products on storage media (including without limitations hard drives on Microsoft's distribution servers, and CD, DVD, or other copies for physical distribution), to make computer-readable storage media containing instructions for each of the routines recited in in claim 5 of the '981 Patent, thereby "making" computer-readable storage media covered by claim 5 of the '981 Patent.

42.    Microsoft has and continues to directly infringe claim 5 of the '981 patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by "using" said computer-readable storage media in distributing the Accused Products to its customers, via download.

43.    Microsoft has and continues to directly infringe claim 5 of the '981 patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents,

by selling, offering to sell, licensing, and/or distributing said computer-readable storage media containing physical copies of the Accused Products.

44.     Microsoft has engaged in each of the above-described acts of infringement during the term of the '981 Patent, in the United States, without Plaintiff's authorization.

45.     Plaintiff has been and continues to be damaged by Microsoft's direct infringement of the '981 patent and is entitled to monetary relief therefor adequate to compensate for the infringement, but in no event less than a reasonable royalty.

## COUNT II
## (INDUCING INFRINGEMENT OF U.S. PATENT NO. 7,885,981)

46.     Plaintiff realleges and incorporates paragraphs 1-45 above by reference.

47.     Certain individuals and entities including without limitation Microsoft enterprise level customers and others, and their employees and contractors (collectively, "Users") have used and continue to use the Accused Products during the term of the '981 Patent, in this judicial district and elsewhere in the United States, without Plaintiff's authority.

48.     Users of the Accused Products have and continue to directly infringe at least claim 1 of the '981 Patent, literally and/or under the doctrine of equivalents, by practicing each and every step of the method claimed in claim 1 of

the '981 Patent, during the term of the '981 Patent, in this judicial district and elsewhere in the United States, without Plaintiff's authority.

49.     Users of Accused Products have and continue to directly infringe at least claim 4 of the '981 patent, literally and/or under the doctrine of equivalents, by "making" the system claimed in said claim, wherein said users combine processor and memory elements as recited in said claim with machine-readable routines as recited therein, so as to complete the assembly of the system recited in said claim, during the term of the '981 Patent, in this judicial district and elsewhere in the United States, without Plaintiff's authority.

50.     Users of the Accused Products have and continue to directly infringe at least claim 4 of the '981 patent, literally and/or under the doctrine of equivalents, by "using" the system claimed in said claim, wherein said users put the claimed system into service and derive the beneficial use thereof, during the term of the '981 Patent, in this judicial district and elsewhere in the United States, without Plaintiff's authority.

51.     Users of the Accused Products have and continue to directly infringe at least claim 5 of the '981 patent, literally and/or under the doctrine of equivalents, by "making" computer-readable storage media covered by claim 5 of the '981 Patent by downloading Accused Products from Microsoft to their

computer hard drives, during the term of the '981 Patent, in this judicial district and elsewhere in the United States, without Plaintiff's authority.

52.    Users of the Accused Products have and continue to directly infringe at least claim 5 of the '981 patent, literally and/or under the doctrine of equivalents, by "using" computer-readable storage media covered by claim 5 of the '981 Patent by installing the Accused Products from said storage media onto which they have downloaded the same, onto their computers, during the term of the '981 Patent, in this judicial district and elsewhere in the United States, without Plaintiff's authority.

53.    Users of the Accused Products have and continue to directly infringe at least claim 5 of the '981 patent, literally and/or under the doctrine of equivalents, by "using" computer-readable storage media covered by claim 5 in the form of CDs, DVDs, flash memory drives, or other media that they have obtained from Microsoft by purchase, license, or otherwise, to install the Accused Products from said storage media onto their computers, during the term of the '981 Patent, in this judicial district and elsewhere in the United States, without Plaintiff's authority.

54.    Microsoft has and/or continues to actively induce the aforesaid acts of direct infringement by Users, and is liable for inducing infringement under 35 U.S.C. § 271(b), by acts including, among others, incorporating elements into the

Accused Products that cause them to constitute infringing systems when combined with and executed on Users' computers; providing downloads of the Accused Products to Users; encouraging its customers for the Accused Products to use those products and their database application creation features; and instructing those customers in the use of the application creation features of the Accused Products through live and Web demonstrations, training videos, brochures and administration, maintenance, installation and user guides.

55.     On information and belief, since the Notice Date, and in any case, at least since the commencement of this action, Microsoft has engaged in such induced infringement with knowledge of the '981 Patent.

56.     Microsoft knew or should have known, since the Notice Date, and in any case at least since the commencement of this action, how Users directly infringe the '981 Patent when they download, install, and use the Accused Products and how Microsoft induces such infringement. In committing and/or continuing its inducement, as alleged above has induced said acts by Users knowing and intending that the same would infringe the '981 patent.

57.     Plaintiff is entitled to damages for Microsoft's induced infringement as alleged herein, from the Notice Date or in the alternative at least from and after the commencement of this action, in an amount adequate to compensate for the infringement, but in no event less than a reasonable royalty.

## COUNT III

## (CONTRIBUTORY INFRINGEMENT OF U.S. PATENT NO. 8,352,981)

58.     Plaintiff realleges and incorporates paragraphs 1-57 above by reference.

59.     Microsoft has and continues to contributorily infringe at least Claims 1 and 4 of the '981 Patent, by among other things, contributing to the direct infringement of Users, by making, offering to sell, or selling, in the United States, or importing a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patent process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '981 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

60.     For example, the ASP.NET Dynamic Data software module, when loaded on a User's computer comprising a processor and memory, results in computational apparatus and complete systems as claimed in claim 4 of the '981 Patent, configured to perform the method of claim 1 of the '981 Patent. Microsoft supplies components containing such software modules in the form of tangible media including but not limited to compact discs and DVDs containing the Accused Products, as well as downloads, in which Microsoft makes a server-side tangible copy of Accused Products available for users to copy onto their own

tangible media via download, as a result of which the Users then have the patented systems for use in practicing the patented processes. Furthermore, said software modules constitute a material part of the invention especially adapted for use in infringing the '981 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use, and Microsoft knows the same by reason of its knowledge of the field and its particular knowledge of the '981 Patent as aforesaid. Thus, Microsoft is liable for contributory infringement pursuant to 35 U.S.C § 271(c).

61.    On information and belief, since the Notice Date, and in any case, at least from and after the commencement of this action, Microsoft has engaged in such contributory infringement with knowledge of the '981 Patent.

62.    Microsoft knew or should have known, from the Notice Date, and in any case at least from and after the date of commencement of this action, how Users directly infringe the '981 patent when they use the Accused Products and how Microsoft contributes to such infringement. In continuing its distribution of the Accused Products, as alleged above, after such notice, Microsoft has contributed to said direct infringement by Users knowing and intending that the same would infringe the '981 Patent.

63.    Plaintiff is entitled to damages for Microsoft's contributory infringement as alleged herein, from the Notice Date or in the alternative at least

from and after the commencement of this action, in an amount adequate to compensate for the infringement, but in no event less than a reasonable royalty.

## COUNT IV

## (WILLFUL INFRINGEMENT)

64.     Plaintiff realleges and incorporates paragraphs 1-63 above by reference.

65.     Microsoft knew of the '981 Patent since the Notice Date.

66.     On information and belief, since the Notice Date, Microsoft has designed, developed, licensed, sold copies of, and distributed the Accused Products with knowledge of the '981 Patent and that its activities infringed the '981 Patent. Microsoft has done so intentionally, and is accordingly a willful infringer.

67.     For reasons including without limitation the foregoing, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284.

## PRAYER FOR RELIEF

Plaintiff requests that the Court enter judgment against Microsoft as follows:

(A) that Microsoft has infringed the '981 Patent;

(B) awarding Plaintiff its damages suffered as a result of Microsoft's infringement of the '981 Patent pursuant to 35 U.S.C. § 284;

(C) awarding Plaintiff enhanced damages pursuant to 35 U.S.C. § 284;

(D) permanently enjoining Microsoft, its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries and parents, and all others acting in concert or privity with it from infringing the '981 Patent;

(E) awarding Plaintiff its costs, attorneys' fees, expenses and interest (including without limitation pre-judgment interest), and

(F) granting Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

68.    Plaintiff hereby demands trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.

Dated: April 18, 2016.

/s/ Ronald Abramson
Ronald Abramson
Tel: (212) 822-0163
Email: ronald.abramson@lewisbaach.com
David G. Liston
Ari J. Jaffess
Alex G. Patchen
**LEWIS BAACH pllc KAUFMANN MIDDLEMISS**
The Chrysler Building
405 Lexington Avenue, 62nd Floor
New York, New York 10174

*Attorneys for Plaintiff*