HBGHKAUC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MICHAEL PHILIP KAUFMAN,

4                    Plaintiff,

5            v.                        16 Civ. 2880 (AKH)

6

7   MICROSOFT CORPORATION,
                                       Markman Hearing
8                    Defendant.

9   ------------------------------x
                                       New York, N.Y.
10                                     November 16, 2017
                                       11:24 a.m.
11
    Before:
12
                        HON. ALVIN K. HELLERSTEIN,
13
                                       District Judge
14
                              APPEARANCES
15
    LEWIS BAACH KAUFMANN MIDDLEMISS
16       Attorneys for Plaintiff
    BY:  RONALD ABRAMSON
17       ARI J. JAFFESS

18  FISH & RICHARDSON P.C
         Attorneys for Defendant
19  BY:  AHMED J. DAVIS
         LEAH A. EDELMAN
20

21

22

23

24

25

HBGHKAUC

1    (Case called)

2    THE COURT:  So this is a Markman hearing where I'm

3    required to interpret the disputed terms of the claims in the

4    patent at issue.  I asked the parties to identify that which

5    was disputed and to make a columnar schedule.  Column one

6    quotes the disputed language.  Column two identifies the claims

7    in which that disputed language appears.  Column three shows

8    plaintiff's proposed construction.  Column four presents

9    defendant's proposed construction.  Column five is blank, and

10   it's the construction of the Court that will conclude this

11   proceeding.  I will mark this schedule as Court Exhibit 1, and

12   it will be part of the record.

13    I think I'd like to proceed in this fashion:  I'll

14   read the disputed claim language, and then we'll deal as we go

15   along item by item with the respective claims for construction

16   ending, to the extent we can, on a resolution of the disputed

17   terms.

18    So the first term is the term "automatically

19   generating," which appears on line 2 of claim 1 and is in the

20   other independent claims as well, claims 1, 4, and 5.

21    Off the record just a second.

22    (Discussion off the record)

23    THE COURT:  I think the defendant is correct, this is

24   a term that doesn't need embellishment or interpretation.  It

25   means what it says, and I propose to adopt defendant's proposed

HBGHKAUC

construction.  And after I announce my comments, I'll pause to

see if there's any comment.

Mr. Abramson?

MR. ABRAMSON:  Your Honor, we don't have a strong

disagreement with that.  The only reason that we had proposed

the construction here was for the avoidance of doubt, just to

make clear that "automatically generating" wouldn't -- that the

plain and ordinary meaning of that term as your Honor has

adopted as the construction would not include a situation that

required individual work per table in order to set up the

generating software application.

THE COURT:  I think any effort to embellish has a

major risk of confusing.  So I will adopt the defendant's

proposed construction.

MR. ABRAMSON:  Your Honor, I had planned on presenting

briefly an expert with regard to certain technical issues.

THE COURT:  If we need an expert to show what someone

skilled in the art would understand by various meanings that

are ambiguous, I'll allow it, but until we get to that point,

it's not necessary.

MR. ABRAMSON:  OK.  Thank you, your Honor.  But I have

him here.  So when we get to that point, I'll suggest it.

THE COURT:  Very well.  Who is he?

MR. ABRAMSON:  Professor Dennis Shasha of New York

University.

HBGHKAUC

1          THE COURT:  He's back in the audience?

2          MR. ABRAMSON:  Yes.  Shasha, S-h-a-s-h-a.

3          MR. DAVIS:  Your Honor.

4          THE COURT:  Don't worry about the mic.  Just speak up

5     loudly.

6          MR. DAVIS:  Sure.  Thank you again.  I'm Ahmed Davis

7     from Fish & Richardson.  I understand your Honor just said

8     he'll hear from Mr. Shasha, Dr. Shasha.  Our only concern is,

9     as your Honor knows, this Markman proceeding was originally

10    scheduled for a few months ago.  At that time we had a

11    communication with plaintiff's counsel, and they told us that

12    they wouldn't be bringing in an expert.  This is literally the

13    first that we've heard they would be bringing an expert.

14         THE COURT:  If you need time in any way, we'll work

15    this out.

16         MR. DAVIS:  Thank you, your Honor.

17         THE COURT:  The next appears from lines 15 to 19 of

18    claim 1, and this is a repeated term.  It reads as follows:

19    "Defining a user interface paradigm comprising a set of modes

20    for interacting with a given database table, said modes

21    comprising create, retrieve, update, and delete, and a

22    corresponding display format for each mode."

23         I'm not happy with either of the proposals.  So I

24    think the words that we need to define are these: "interface";

25    "paradigm"; "set of modes"; "interacting"; "database table";

HBGHKAUC

1    the four functions, "create," "retrieve," "update," and

2    "delete."  And that's it.  I think both sides focusing are on

3    the last part of the "corresponding display format for each

4    mode."  I don't find that ambiguous, but the other phrases that

5    I read out do need interpretation.

6             What's your comment, Mr. Abramson?

7             MR. ABRAMSON:  Yes, Judge.  Should I stand when I make

8    these arguments, sir?

9             THE COURT:  If you speak loudly, you can sit.

10            MR. ABRAMSON:  Thank you, your Honor.

11            Right, your Honor has indicated that you didn't find

12   "corresponding display format for each mode" to be ambiguous,

13   and I would -- before going into this, can I inquire how the

14   Court interprets "corresponding" so that I have the framework

15   for the rest of my response?  The parties didn't dispute --

16            THE COURT:  "Corresponding display format" refers to

17   create, retrieve, update, and delete.

18            MR. ABRAMSON:  OK, your Honor.  Then to address the

19   other questions that have been posed.

20            THE COURT:  That's a grammatical construction.

21            MR. ABRAMSON:  I'm sorry.  I did not hear that.

22            THE COURT:  It's a grammatical construction.  The word

23   "corresponding" explains the different modes that preceded that

24   word in the claim.

25            MR. ABRAMSON:  The Court's interpretation is there is

HBGHKAUC

1    a corresponding display format for each mode; correct?

2            THE COURT:  Not necessarily.

3            MR. ABRAMSON:  OK.  There could be --

4            THE COURT:  That's a matter of enabling.  That's not a

5    matter of interpretation.  The purpose of a Markman hearing is

6    not to go into the enabling of a patent claim but to interpret

7    ambiguity.

8            MR. ABRAMSON:  OK.  Let me address the issues that the

9    Court has raised.  Defining a user interface paradigm, so we

10   understand the words "user interface paradigm" to be the

11   general description to a mode of functioning of a user

12   interface designed for a piece of software.

13           THE COURT:  What's an interface?

14           MR. ABRAMSON:  An interface is -- defines a

15   relationship between two entities -- defines the interface, the

16   relationship between two entities, how they communicate with

17   each other.  So in the case of a user interface, one entity is

18   a human being, user.  The other entity is the computer, and the

19   interface comprises the set of elements, perceptible elements,

20   through which a user interacts with the computer.  The user

21   gives input through the computer through give interface

22   elements, such as could be a keyboard, for instance.

23           THE COURT:  What does "paradigm" mean?

24           MR. ABRAMSON:  Paradigm means a model, a framework.  A

25   model or a framework.

HBGHKAUC

1    THE COURT:  Seems to me that's a pretty good working

2 solution.  What do you think, Mr. Davis?

3    MR. DAVIS:  Your Honor, I think that those general

4 descriptions by Mr. Abramson are fine.  I do think that as we

5 go through this, your Honor hopefully will see there is an

6 issue that's crystallized between the parties over the word

7 "corresponding" that we'll get to.

8    THE COURT:  You're setting each other up for various

9 motion practice.  That's not my interest to do that.  We could

10 do one of two things.  We can stop for a moment, ask

11 Mr. Abramson to draft some language that defines these terms,

12 pass it to Mr. Davis and give me the consensus, or you can do

13 it in your offices and submit it to me later.

14    MR. ABRAMSON:  I don't think it's that difficult to

15 do.

16    THE COURT:  Then do it.

17    MR. ABRAMSON:  Well, I don't think it's that difficult

18 to do here, discuss it.

19    THE COURT:  Pardon?

20    MR. ABRAMSON:  But if the Court thinks that will take

21 too much time, we could do as your Honor suggests.

22    THE COURT:  Give it a try.  Let's try.  Go ahead.

23 Take a pad and write.

24    MR. ABRAMSON:  I think we have general agreement as to

25 what user --

HBGHKAUC

1          THE COURT:  You don't need to discuss it with me.

2     Discuss it with Mr. Davis off the record.  Write something.

3     Take a pad.  You have a pad?

4          MR. ABRAMSON:  OK.

5          THE COURT:  All right.

6          MR. ABRAMSON:  Take a break and do that?

7          THE COURT:  Do it real fast.

8          MR. ABRAMSON:  OK.

9          (Recess)

10         THE COURT:  I think the procedure that I just

11    suggested is not a good procedure.  It takes each side

12    countless time to have a discussion with each proposed

13    definition amongst themselves, and then I'm sure there will be

14    differences with the other.  So I think what I need to do is

15    let you do this in the office, in your offices, and then we'll

16    define a time when you come back -- or, actually, you'll submit

17    an amended schedule of this nature.  And to the extent we need

18    another hearing, I'll call for one.

19         MR. ABRAMSON:  Your Honor, can we have guidance here

20    on what -- are there any other terms that the Court

21    particularly --

22         THE COURT:  Yes.  We'll get into them as we go along.

23         So I think I will benefit, however, by an oral

24    expression, so let's go to the item 3 in the disputed claim

25    language.  Let me hear from Mr. Abramson.  What do you think

1    those terms mean?

2              MR. ABRAMSON:  Item 3?

3              THE COURT:  Interface paradigm, set of modes.

4              MR. ABRAMSON:  OK.  Well, as I was saying, I believe

5    the interface paradigm, user interface paradigm, is a framework

6    or model for a set of -- for input/output operations that

7    allows the user to interact with the computer.

8              THE COURT:  How would you deal with that, Mr. Davis?

9              MR. DAVIS:  So I didn't jot that down very quickly.

10   Generally, I think that's OK, your Honor.  For context, what we

11   were talking about here internally, as well as with

12   Mr. Abramson in light of your Honor's guidance over the

13   "corresponding" language, was to try to come up with an agreed

14   term that would avoid that issue.  And the challenge that we

15   face, for example, is the bottom of -- I'm now looking at

16   column four, approximately line 63 of the patent where it

17   gives, as an example, "the paradigm encompasses" and then it

18   says "a set of modes" and then it goes further.  So in defining

19   that term, it runs us into the later terms in the claim.  So,

20   in general, I think the language that Mr. Abramson proposed

21   sounds OK.  I'd want to see it on a piece of paper.

22             THE COURT:  All right.  You can work on it, but I

23   would understand it as a relationship between the information

24   in a display and the data which is extracted to be inserted in

25   the appropriate places in the display, but I'm sure I can agree

HBGHKAUC

1    with what you come up with.  I identify "set of modes" as an

2    ambiguity.  I don't know if that's ambiguous.  I think that's

3    clear enough.

4             MR. DAVIS:  If I may.

5             THE COURT:  "Interacting with a given database table,"

6    I think, is subsumed in the definition we're talking about with

7    interface paradigm.

8             MR. ABRAMSON:  Your Honor, I would say that the

9    interacting is further addressed in this language when it says

10   "said modes comprising create, retrieve, update, and delete."

11   So what this is doing is this is telling us what the available

12   modes of operation are.

13            THE COURT:  What is the "create" mode?

14            MR. ABRAMSON:  "Create" mode is when you create data

15   in the database, like you add a new customer.  We're going to

16   add Microsoft --

17            THE COURT:  Insert an item into a database?

18            MR. ABRAMSON:  Insert Microsoft corporation as a

19   customer we've added.

20            THE COURT:  And "retrieve" is to call it up?

21            MR. ABRAMSON:  "Retrieve" is to call it up.  Give me a

22   list of customers that begin with "M."

23            THE COURT:  "Update" is to modify?

24            MR. ABRAMSON:  "Update" is to modify.  I want to

25   change their phone number.

1          THE COURT:  And "delete" is --

2          MR. ABRAMSON:  To delete.

3          THE COURT:  -- cause an item to disappear.  OK.  We

4    can work with those.  So you'll try to come up with those, OK.

5          MR. ABRAMSON:  Yeah.

6          THE COURT:  Then item 4 which deals with lines 31 to

7    38 of claim 1 is a long phrase that's taken up in items 5, 6,

8    and 7 with specific definitions.

9          MR. ABRAMSON:  Right.  Your Honor, there's --

10   actually, I think the main dispute about the definitions

11   themselves have to do with managing, what manage relationships

12   among tables --

13         THE COURT:  I think I agree with you.  I think a lot

14   of these differences in wording are not meaningful.

15         MR. ABRAMSON:  I would agree with that, your Honor.

16         THE COURT:  And I think, after some reflection, you

17   can eliminate your differences for quite a few of these,

18   leaving only the really disputed items for --

19         MR. ABRAMSON:  Right.

20         THE COURT:  -- for interpretation.

21         MR. ABRAMSON:  One area of difference is what

22   "managing relationships across tables" means, and

23   plaintiff's position means that that's managing the way data

24   is -- that that managing is managing the way data is inserted

25   or updated in a table so as to preserve the relationships among

HBGHKAUC

1    the tables, the proper relationship among the tables.

2              THE COURT:  Give me an example.

3              MR. ABRAMSON:  So, for instance, if I want to add --

4    if I want to add a new order.  I have a database, and I have --

5    one of my tables is a list of orders, and the order --

6              THE COURT:  Like purchase orders?

7              MR. ABRAMSON:  Like a purchase order.  And the order

8    goes by customer.  And I want to add an order, and it has a

9    blank that says put the customer down.  I can't put down any

10   customer.  I have to be limited -- in order not to corrupt the

11   database, if the database also happens to contain a table of

12   customers, I want my user interface to control me so I can't

13   enter a customer that doesn't exist.  Because if I enter a

14   customer that doesn't exist, then when we try to ship to that

15   customer, we won't know who it is, we won't know where it is.

16   It's called the integrity of the database will be corrupted.

17   So in order to prevent that from happening, we manage the

18   inputs so that we can only add permissible values, which are

19   values that exist that are defined in the appropriate table

20   that's there to define those values.

21             That's what we think the claim means by "managing

22   relationships across tables," not -- Microsoft's interpretation

23   is defining the relationship across tables to begin with, and

24   our position on that is, no, that takes place when you set up

25   the database schema.  What our claim is about it generating an

HBGHKAUC

1    application to use the database from an existing schema.  It's

2    not about an application that let's you design a schema.  It's

3    an application that says:  Give me a schema, and I'll give you

4    an application that works on that schema, not vice versa.

5    There is a difference between the parties on that.  We think

6    our interpretation is correct, and I'm prepared to offer expert

7    testimony if that would be helpful.

8             THE COURT:  We don't need it.

9             So I'm thinking you're saying something like this:

10   Ensuring that all inputs have standardized terms, allowing them

11   to be replicated among databases.

12            MR. ABRAMSON:  I'm not sure I follow that, your Honor.

13            THE COURT:  Pardon?

14            MR. ABRAMSON:  I think it is more accurate to say

15   limiting user inputs to permissible values as defined in

16   appropriate tables in the database.

17            THE COURT:  What do you mean by "permissible values"?

18            MR. ABRAMSON:  Values that exist in the related

19   tables.

20            THE COURT:  What are values?  We think of values as

21   numbers.

22            MR. ABRAMSON:  Could be numbers.  It could be any

23   representation of data.

24            THE COURT:  I think you're thinking of standardization

25   rather than values.  Everything that's put in has to have

HBGHKAUC

1     common features so they can --

2               MR. ABRAMSON:  It has to be defined.  The point of

3     this is --

4               THE COURT:  Defined, you said defined terms or values.

5               MR. ABRAMSON:  If you have two tables in a database

6     that are related such that one is supposed to depend on the

7     other, you can only refer to the one that it depends upon by

8     using values that are defined in -- it's called a

9     cross-reference, your Honor.  If you have a relationship

10    between two tables and you're going to -- it's a

11    cross-reference relationship between two tables, and you're

12    going to affect data in one data that depends on the other,

13    then it has to be a value that's defined in the table that it

14    depends on.

15              THE COURT:  So I'll try again:  Assuring that all

16    inputs have common and standardized features, allowing them to

17    be --

18              MR. ABRAMSON:  I wouldn't say it's common, your Honor.

19    It's well-defined.

20              THE COURT:  Common.

21              MR. ABRAMSON:  It's not common.  Doesn't have to be

22    common.  It just has to be preexisting and defined.  That's all

23    it has to be.

24              THE COURT:  Have preexisting and defined terms or

25    values, allowing cross-references among databases?

HBGHKAUC

1                MR. ABRAMSON:  Correct.

2                THE COURT:  Someone has that.  You can have that as a

3     working definition.

4                MR. DAVIS:  OK, your Honor, that's a working

5     definition we're going to go back and talk about?

6                THE COURT:  Yes, yes.  Don't talk about it with the

7     perspective of what motions you can make afterwards.  Talk

8     about it in terms of what we need to do to define the terms.

9                So you're saying that we don't have to worry about

10    "navigating" and we don't have to worry about "representing"?

11               MR. ABRAMSON:  I don't think we do.  I think, your

12    Honor, that now having resolved that issue, then the question

13    is, with regard to term four, how do you string all these

14    pieces together?  Does it require -- we have an application

15    that's being generated.  The application is presented through

16    displays, and the application is supposed to support the

17    operations of representing, navigating, and managing

18    relationships across tables, and so forth.

19               So I think at the heart of this dispute is does that

20    mean that -- so there's a list of functional things that this

21    generated application is supposed to do.  Does this claim mean

22    that each and every display screen that you could possibly get

23    out of this application has to do each and every function, or

24    is it sufficient that they do, as it says in the claim, that

25    each and every display screen carries out processes, which

HBGHKAUC

1   would mean just a plurality of processes?

2           THE COURT:  I think we're getting too emerged in

3   efforts to explain rather than to interpret.

4           MR. ABRAMSON:  Well, the interpretational issue is

5   between whether you have to -- whether each and every screen

6   has to implement each and every function in order to satisfy

7   this claim language.

8           THE COURT:  And I said before that I don't think

9   that's part of what I have to do here.

10          MR. ABRAMSON:  Then we're fine with that, your Honor.

11  We don't -- I think we agree.

12          MS. EDELMAN:  Your Honor, Leah Edelman for Fish &

13  Richardson.  For clarification, on term seven was your Honor

14  setting forth a proposed construction to take back as to just

15  "managing" or was it "managing said relationships across

16  tables"?

17          THE COURT:  The latter.

18          MS. EDELMAN:  OK.  Your Honor, Microsoft's position is

19  that "representing," "navigating," and "managing," those are

20  three words that are processes within that larger integrates

21  claim limitation.  And if what Mr. Abramson is proposing is a

22  definition just for "managing," that would be one issue; but

23  then if what he's proposing is a definition for "managing said

24  relationships across tables," we run into an issue where the

25  claim limitations for "representing" and "navigating" aren't

HBGHKAUC

1    treated consistently with "managing," which is the third

2    process.

3              THE COURT:  Shore your definitions up there so that

4    they're standardized.  What does "representing" mean?

5              MR. ABRAMSON:  I can address that, your Honor.

6    "Representing" in the context of this claim -- the claims

7    recites integrating into each said mode by processes for

8    representing.  And processes for representing what?

9    Representing, it says, relationships across tables.  So to

10   represent a relationship across tables, you would have to have

11   a display.  We have an item that says "customer," and then it

12   says "Microsoft Corporation" --

13             THE COURT:  You mean by representing displaying?

14             MR. ABRAMSON:   It means by representing, representing

15   the fact that there is another table.  When you look at the

16   display, you can see from the display that there's something in

17   that entry form that says "customer" and you can see just from

18   looking at the display that that comes from a -- the

19   information we want to convey is that "customer" isn't in

20   isolation.  "Customer" is related to another table.  We want a

21   visual clue in that display that represents that there's a

22   relationship there with another table, which happens to be a

23   customer table.

24             And to make that less abstract, let's say you're

25   looking at an entry form and it says "customer," it says

HBGHKAUC

 1  "address," it says "telephone number," and the word "customer"

 2  has a drop-down next to it.

 3          THE COURT:  Try for a simple explanation,

 4  Mr. Abramson, please.

 5          MR. ABRAMSON:  Well, the simplest explanation is that

 6  the display --

 7          THE COURT:  There's so many words you're throwing out.

 8  It suggests to me that you're just creating an ambiguity to

 9  explain an ambiguity.

10          MR. ABRAMSON:  Well, in term five I think we did

11  address that.  We said representing said relationships across

12  tables means visually representing at least the existence of a

13  relationship from the data records and the table being viewed.

14          THE COURT:  That sounds much better than what you

15  have.

16          MR. ABRAMSON:  And that's what we submitted, your

17  Honor.

18          THE COURT:  Where did you submit that?

19          MR. ABRAMSON:  Item 5.  Items 5, 6, and 7.

20          THE COURT:  Why do you need the words "at least"?  You

21  could have said "visually representing the existence of a

22  relationship" --

23          MR. ABRAMSON:  I don't need "at least."

24          THE COURT:  -- "among tables."

25          MR. ABRAMSON:  I think what's said here is accurate,

HBGHKAUC

1  "in the table being viewed to the corresponding data in another

2  table."  I think that's accurate.

3              THE COURT:  Mr. Davis.

4              MR. DAVIS:  Ms. Edelman will address this one.

5              THE COURT:  Ms. Edelman.

6              MS. EDELMAN:  It seems like a lot of words to

7  encompass one which is representing --

8              THE COURT:  I agree with you.  It has --

9              MS. EDELMAN:  It also seems -- sorry for interpreting,

10  your Honor.  It also seems to implicate that, again, second

11  part of "said relationships across tables," and your Honor

12  asked for what "representing" meant.

13              THE COURT:  I propose the following:  "Visually

14  representing the existence of a relationship between one data

15  table and another."

16              MR. ABRAMSON:  Your Honor, that -- I think that is --

17  we would disagree with that.  That, I think, is going to open

18  us to motion practice because what we're talking about here is

19  the distinction between the data and the schema for the data.

20  It's a key distinction.  So visually representing that there's

21  a relationship between two tables is that abstract relationship

22  between two tables.  We're not really talking about that.

23  We're visually representing at least the existence of a

24  relationship from the data records and the table being viewed.

25  So if we look at the table and we see the data record for

20

HBGHKAUC

1    Microsoft, we're indicating at least the existence of a

2    relationship from that data.

3            THE COURT:  Then, "visually representing the existence

4    of a relationship among data entries on tables."

5            MR. ABRAMSON:  That is correct, your Honor.  That's

6    correct.

7            THE COURT:  "Visually representing the existence of

8    relationships between data entries in different tables."

9            MR. ABRAMSON:  That's good.

10           THE COURT:  You OK with that, Mr. Davis, Ms. Edelman?

11           MS. EDELMAN:  As long as we're talking about the

12   tables, your Honor, and the -- this last part between data

13   entries among tables is -- we're talking about said

14   relationships across tables for those three terms or -- I guess

15   the fundamental issue here is are we construing that "said

16   relationships across tables" to be the same, then, for those

17   three processes?

18           THE COURT:  I don't know what you're saying.  So we

19   have the definition.

20           What is navigating relationships across tables?

21           MR. ABRAMSON:  Your Honor, it's fairly

22   straightforward.

23           THE COURT:  What's the word "navigate"?  What does

24   that mean?

25           MR. ABRAMSON:  It means making -- in the user

HBGHKAUC

```
1    interface it means making a transition from one table to

2    another.  One table to the table that's represented, going back

3    to the definition.  It's making a transition in the user

4    interface from one table --

5             THE COURT:  What do you mean by "transition"?

6             MR. ABRAMSON:  -- to the other one that was

7    represented.

8             THE COURT:  What do you mean by "transition"?

9             MR. ABRAMSON:  Moving, moving in the user interface.

10   So we move from the -- we're looking at the order, and we see

11   that it's related to customers.  And we click on that, and now

12   we're looking at the record.  We're not looking at that order

13   anymore; we're looking at the record for Microsoft Corporation.

14   So we have navigated from the orders table to the customers

15   table, saw that there was a relationship from the order to

16   customer, and then we clicked on it and then we're now looking

17   at the customer.

18            THE COURT:  Something like moving from the data

19   entries in one table to those of another?

20            MR. ABRAMSON:  Well, moving from the data entries

21   represented in the first table as existing in a second table --

22            THE COURT:  OK.

23            MR. ABRAMSON:  -- to the second table, to the data

24   table.

25            THE COURT:  Moving from the data entries represented
```

HBGHKAUC

1   in one table to the data entries --

2           MR. ABRAMSON:  To the corresponding data entry in a

3   related table.

4           THE COURT:  To corresponding data entries in other

5   tables.

6           MR. ABRAMSON:  That's good.

7           THE COURT:  You OK with, that Ms. Edelman?

8           MS. EDELMAN:  Your Honor, the issue there is with the

9   data.  The definition that your Honor proposed is really

10  focused on the data entries.  And Microsoft's position is that

11  said relationship is actually the entry, and the basis for that

12  is referring to the tables or the data model, the schema, and

13  not to the underlying data.

14          THE COURT:  That's not the way I understand it.  It's

15  not to set lines and columns that are identified in a table,

16  but to the information within those lines and columns.  Am I

17  right, Mr. Abramson?

18          MR. ABRAMSON:  Yes.  Yes, your Honor.

19          THE COURT:  OK.  We've already done management, so

20  we're up to item 8.

21          MR. ABRAMSON:  Right.  Now, item 8 is -- I don't think

22  the dispute here is what it means.  Now we're getting -- I

23  think item 8 and everything that comes after it, I believe, is

24  at issue -- an issue that Microsoft has raised under

25  Section 112(6) where they're alleging that these are all -- the

HBGHKAUC

1    remaining limitations in this chart, they're alleging they're

2    all means-plus-function limitations under Section 112, sixth

3    paragraph of the Patent Act, and subject to a special rule of

4    construction.  And where they're going with this on each one of

5    these is to argue --

6              THE COURT:  I'm not interested in that, Mr. Abramson.

7              MR. ABRAMSON:  Well, we don't need to address it.

8    They're not interpretational issues in the sense of what the

9    claims are.

10             THE COURT:  I'm not dealing with the sufficiency or

11   lack of sufficiency of terms.  I'm dealing with the definition

12   of terms.

13             MR. DAVIS:  Right.  So your Honor, this is Mr. Davis.

14   I do think Mr. Abramson is actually right.  The parties

15   probably can come to some agreement as to what those terms

16   mean, but there is a fundamental dispute about whether those

17   terms ought to be construed pursuant to Section 112(6) as

18   means-plus-function claims.  I understand what your Honor said

19   here today and from past transcripts that you'll deal with

20   indefiniteness down the road as a separate validity issue, but

21   the question of whether these terms should be construed as

22   means-plus-function terms is a claim construction issue and

23   Mr. Abramson --

24             THE COURT:  Let me stop you, because you're going off

25   into issues that I don't have to deal with today.

HBGHKAUC

1        So the first phrase, is it "providing an output stream

2   from said server," I don't think I need to define that.

3        Second phrase, "for user display," again, I don't

4   think I need to define that.

5        "And input devices," I don't know what that means.

6   How can an output stream deal with input devices?

7        MR. ABRAMSON:  Well, output, your Honor, one of the

8   things you can output is you can output a screen which allows

9   the user to input into that screen.  I can send you --

10       THE COURT:  Is that what it means?

11       MR. ABRAMSON:  Yeah, that's what it means.  I can send

12  you over the network a specification for a screen that has a

13  button to click or has a blank in it for you to fill in

14  information.

15       THE COURT:  So there's two purposes in the output

16  screen.  One is to see it, display, and the second is to --

17       MR. ABRAMSON:  To provide a facility --

18       THE COURT:  Would you say manage it?

19       MR. ABRAMSON:  No, provide a facility for input.

20       THE COURT:  All right.  That works, "provide a

21  facility for inputs."

22       Then the claim goes on to say, "defining a user

23  interface paradigm comprising a set of modes for interacting

24  with a given database table, said modes comprising create,

25  retrieve, update, and delete."

HBGHKAUC

1          MR. ABRAMSON:  This is the same language, your Honor.

2          THE COURT:  I know.  But why can't we delete "for

3     interacting with a given database table"?  It's surplusage.

4          MR. DAVIS:  I'm sorry.  Can you say that one more

5     time, your Honor.

6          THE COURT:  I want to delete the phrase "for

7     interacting with a given database table."

8          MR. DAVIS:  That's in the claim itself.

9          MR. ABRAMSON:  Well, the purpose of the set of

10    modes --

11         THE COURT:  I take the point.

12         MR. ABRAMSON:  The purpose of the set of modes is to

13    interact with the database table.

14         THE COURT:  You're saying the modes comprising create,

15    retrieve, update, and delete may interact with the database

16    table?

17         MR. ABRAMSON:  That's the way in which it can

18    interact.

19         THE COURT:  All right.

20         MR. ABRAMSON:  Standing back and looking at this, what

21    this is saying is generating something on a computer that's

22    going to send some information over a wire and that information

23    over the wire is the whole layout of a user interface with

24    input and output provisions so you can see data and enter data

25    and indeed do all -- interact with the data by creating,

HBGHKAUC

```
 1   retrieving, updating, and deleting, which is fundamentally what
 2   you need to do with the data.  So it provides a general
 3   facility to operate on the data and the database.  That's what
 4   this language is getting at.
 5            MR. DAVIS:  This is Mr. Davis, your Honor.  I just
 6   wanted to agree with what Mr. Abramson said, and I know your
 7   Honor said you saw this, but this language --
 8            THE COURT:  If the two of you agree, I have no
 9   problem.
10            MR. DAVIS:  I do.  I just want to note this was the
11   same language --
12            THE COURT:  Before.
13            MR. DAVIS:  -- item 2 that we skipped over.
14            THE COURT:  You're going to create the definitions
15   there, but once you create them, they're good for all purposes.
16            MR. ABRAMSON:  I think what Mr. Davis is saying here
17   is that the reason why item 8 is in this chart -- since we've
18   already interpreted most of this, the reason item 8 is in the
19   chart is the issue they want to raise on 112(6) and
20   indefiniteness.
21            MR. DAVIS:  And that, respectfully, actually applies
22   to all over the rest of the disputed claim language.
23            THE COURT:  Gentlemen and ladies, I'm not interested
24   in that.  I think what we're saying here, we start with
25   defining a user interface paradigm comprising a set of modes
```

HBGHKAUC

1    comprising create, retrieve, update, and delete functions

2    susceptible of being input into database tables and a facility

3    for displaying such formats.

4         MR. ABRAMSON:  That's correct.

5         THE COURT:  Why don't we use that as a working

6    definition.  Counsel can take that and try to adapt it.

7         MR. DAVIS:  Your Honor, I've heard -- this is

8    Mr. Davis.  I've heard what you said.  We will certainly do

9    that.  My concern is that the fundamental dispute between the

10   parties as it relates to No. 8 that we were just discussing --

11        THE COURT:  Let me interrupt, Mr. Davis.  My purpose

12   in interpreting is not to slant the arguments one way or

13   another but to allow each of you to be accommodated to do the

14   things you want to do on a substantive basis.  So I'm not

15   trying to decide the merits of the validity of the patent.  I'm

16   trying to define the terms of the patent.  And if I succeed, I

17   will not have weighted the arguments for either side.  That's

18   the goal.  So your continuous concern about what you can do

19   about this is misplaced.

20        MR. DAVIS:  Thank you, your Honor.

21        THE COURT:  We're in No. 9, "causing said server to

22   scan said database and apply a body of rules to determine the

23   table structures, constraints, and relationships of said data

24   model."  Up to now we've been talking about inputs and

25   particular items of data.  This is the first time we're talking

HBGHKAUC

1    about structures, constraints, and relationships; is that

2    right?

3            MR. ABRAMSON:  Correct, your Honor.  Again, this is

4    not an issue that was flagged for an interpretation of what the

5    words mean.  This is another one of those 112(6) --

6            THE COURT:  Then why do you put it in there?  Delete

7    that nine.

8            MR. ABRAMSON:  We're perfectly happy to do this.  This

9    was Microsoft --

10           THE COURT:  You OK with that, Mr. Davis?

11           MR. DAVIS:  May I address that?

12           THE COURT:  You're not OK with that?

13           MR. DAVIS:  Part of the claim construction process is

14   to determine whether the term should be construed under 112(6),

15   and the proposal that the plaintiff's made was plain meaning.

16   And as it relates to these words at No. 9, the only issue was

17   whether that language should be construed consistent with

18   112(6).  I've heard your Honor and I understand that your

19   Honor's saying that's an issue for a later day.  So all of the

20   subsequent numbers in the table after that are claim language

21   from the claims that Microsoft has contended should be

22   construed pursuant to 112(6).  There's no actual dispute --

23           THE COURT:  No, I'm not going to do that.

24           MR. DAVIS:  I understand.  Your Honor has made that

25   clear.  I'm only noting that, in the interest of time, because

HBGHKAUC

1    your Honor's made it clear that you're not going to do that, so

2    I'm not sure we need to go through the rest of those today.

3              THE COURT:  OK.  Good.  We'll delete them.  What's

4    left?

5              MR. ABRAMSON:  That's it, your Honor.

6              THE COURT:  Good.  All right.  How much time do you

7    think you need to come up with definitions along the lines

8    we've been discussing?

9              MR. ABRAMSON:  Probably a week.

10             MR. DAVIS:  Respectfully, the concern that I have --

11   and I think that Mr. Abramson understands this -- for two or

12   three of the terms that we've discussed here today, we're

13   certainly going to be able to come up with an agreement, but

14   for some of the others, we're going to be, I think, in the same

15   place where we are today about the meaning of corresponding --

16             THE COURT:  If you don't give me something meaningful,

17   I'm more likely to choose Mr. Abramson's proposal.  So stop

18   worrying about your motion.  It's not the function of a

19   Markman.

20             MR. DAVIS:  I understand, your Honor.  We'll go back,

21   and we will talk with Mr. Abramson and discuss where we can

22   find common ground.

23             MR. ABRAMSON:  Your Honor, we do have another trial

24   coming up on the 30th.

25             THE COURT:  Say again.

1          MR. ABRAMSON:  I don't want to be having to do this

2    right around then.

3          THE COURT:  Hold on a minute.

4          MR. ABRAMSON:  Your Honor, because of my own schedule

5    then, I have a family travel December 6, December 5 would work

6    well for us.

7          THE COURT:  Why don't we go off the record and find a

8    date.

9          (Discussion off the record)

10          THE COURT:  On the record.

11          The parties will review my comments and their thinking

12    with a view to giving me an amended schedule of disputed claims

13    and proposed interpretations consistent with the comments I

14    made today about focusing on the explanations of terms, the

15    definition of terms, and not on the legal sufficiency or

16    insufficiency of those terms.  So both sides agree that they

17    will have time to propose, discuss, and negotiate with each

18    other and submit a single document of their terms following the

19    format we've been using by the close of business of December 5.

20          MR. DAVIS:  Your Honor, this is Mr. Davis.  Judge,

21    just so that I'm clear, for the terms, to the extent the

22    parties aren't able to reach resolution, we'll submit that and

23    note that?

24          THE COURT:  I will then have a hearing.

25          MR. DAVIS:  Thank you.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

HBGHKAUC

1          THE COURT:  If you want to have a joint proposal, a

2     joint letter showing your respective proposals, that would be

3     OK, too.  But I don't want to be cluttered with documents.  So

4     you can give me a schedule of what you agree to and some kind

5     of a schedule of what you disagree to with the proposals that

6     for each side.  All right.  Thanks very much.

7          MR. ABRAMSON:  Thank you, your Honor.

8          (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25