UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                :
MICHAEL PHILIP KAUFMAN,                         :     **ORDER GRANTING IN PART**
                                                :     **AND DENYING IN PART**
                              Plaintiff,        :     **MOTION FOR SUMMARY**
                                                :     **JUDGMENT**
            -against-                           :
                                                :     16 Civ. 2880 (AKH)
MICROSOFT CORPORATION,                          :
                                                :
                              Defendant.        :
                                                :
------------------------------------------------------------- x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/22/2020

ALVIN K. HELLERSTEIN, U.S.D.J.:

This is an action brought by the owner of U.S. Patent No. 7,885,981 (the "'981 Patent"), Michael Kaufman ("Plaintiff" or "Kaufman"). Plaintiff alleges that Defendant Microsoft Corporation's ("Defendant" or "Microsoft") software infringes the '981 Patent. Defendant moves for summary judgment. I held oral argument on Defendant's motion on January 16, 2020. For the reasons stated at oral argument and for the reasons that follow, Defendant's motion is granted in part and denied in part.

## BACKGROUND

The '981 patent was filed on October 26, 2007 and issued on February 8, 2011. Plaintiff's Rule 56.1 Statement in Opposition to Microsoft's Motion for Summary Judgment, ECF No. 127 ("Pl's 56.1") ¶ 2.[1] The invention described in the '981 Patent relates to the field of data processing, and more specifically to relational computer databases. The object of the invention is, among other things, "to provide a complete and fully functional user interface (UI)

---

[1] Facts are taken from Defendant's Rule 56.1 Statement of Undisputed Material Facts in Support of Microsoft's Motion for Summary Judgment, ECF No. 114; Plaintiff's Rule 56.1 Statement in Opposition to Microsoft's Motion for Summary Judgment, ECF No. 127; and supporting materials referenced therein. Citations to Pl's 56.1 can be considered to incorporate both Defendant's statements of fact and Plaintiff's responses.

1

for any arbitrarily complex or large database schema, without any custom software programming." Pl's 56.1 ¶ 3; *see also* ECF No. 40-6 (together with ECF No. 40-7, the "'981 Patent") at col. 3:8-12.

A key feature of the invention is the automated nature of certain steps. *See* Pl's 56.1 ¶ 7. The term "automatically generating" appears in the preamble to each of the independent claims. Pl's 56.1 ¶¶ 4-6; *see also* '981 Patent at col. 377:3, 377:46-57, 378:23-24. Of most relevance to Defendant's argument here, the act of "scan[ning] [a] database," described in limitation (b) of each of the independent claims, occurs "automatically." Pl's 56.1 ¶¶ 4-7; *see also* '981 Patent at col. 377:2-37, 377:46-378:54.

Each independent claim requires "a user interface paradigm comprising a set of modes for interacting with a given database table, said modes comprising create, retrieve, update and delete, and a corresponding display format for each mode."[2] Pl's 56.1 ¶¶ 4-6; *see also* '981 Patent at col. 377:14-19, 377:58-378:4, 378:32-36. Furthermore, the invention "integrates into each said mode display processes for representing, navigating, and managing said relationships across tables." Pl's 56.1 ¶¶ 4-6; *see also* '981 Patent at col. 377:25-38, 378:9-21, 378:41-54. In summary, three functions (*i.e.*, representing, navigating, and managing) are integrated into four mode displays (*i.e.*, create, retrieve, update, and delete).

The '981 Patent states, "The preferred embodiment of the invention . . . corresponds in most respects to an implementation of the invention being developed under the trademark SCHEMALIVE™ which is herein referred to as the 'reference implementation.'" '981 Patent at col. 4:34-38. The complete source code for that reference implementation (the "Schemalive Reference Implementation") is reproduced in the '981 Patent. Pl's 56.1 ¶ 31. The '981 Patent

---

[2] Following a *Markman* hearing, I issued a claim construction order. ECF No. 69. The portions of the claims requiring construction, where used here, have the definitions assigned in the claim construction order.

also includes figures depicting the Schemalive Reference Implementation's mode displays. Pl's 56.1 ¶ 32. The source code for the Schemalive Reference Implementation does not perform the delete functionality, and the figures do not show a delete mode display, as Kaufman had not yet incorporated the delete functionality in the Schemalive Reference Implementation. Pl's 56.1 ¶¶ 32, 34. The '981 Patent does, however, include instructions on how to add a delete mode to the Schemalive Reference Implementation. Pl's 56.1 ¶ 32.

Plaintiff alleges that Microsoft's Dynamic Data infringes the '981 Patent. Pl's 56.1 ¶ 14. Microsoft actively developed Dynamic Data between 2007 and 2009. Pl's 56.1 ¶ 15. A user creates the Dynamic Data application from a tool called Visual Studio. Pl's 56.1 ¶ 17. To scan a database, the user must invoke Object Relational Modeler and click through a series of prompts and windows, essentially telling the software which database to scan. Pl's 56.1 ¶¶ 19-20. Defendant contends, and Plaintiff contests, that additional manual steps are necessary at the end of the scanning process. Pl's 56.1 ¶ 21.

The parties agree that some allegedly infringing user interfaces in Dynamic Data do not integrate all three claimed processes (representing, navigating, and managing). Pl's 56.1 ¶¶ 24, 26-27. For example, Dynamic Data's purported retrieve mode does not have a process for managing. Rather, Plaintiff alleges, each allegedly infringing display integrates at least one of the three claimed processes. Pl's 56.1 ¶ 24.

The instant suit is not the first time Microsoft has come across Kaufman's work. First, in 2006, the United States Patent and Trademark Office ("USPTO") cited one of Kaufman's patent applications when it rejected a Microsoft patent application. Pl's 56.1 ¶ 38; Declaration of Leah J. Edelman in Support of Microsoft's Motion for Summary Judgment, ECF No. 113 ("Edelman Decl."), Ex. J at 32. The cited Kaufman application, which Kaufman calls the "parent to the

3

'981 Patent," did not have the same claims as the '981 Patent. Pl's 56.1 ¶ 38. Second, when European authorities rejected a Microsoft patent application in 2009, they cited a 2002 Patent Cooperation Treaty application made by Kaufman. Pl's 56.1 ¶ 39; Edelman Decl., Ex. L. The cited Kaufman application again did not have the issued claims of '981 Patent, but Kaufman contends they were substantively similar. Pl's 56.1 ¶ 39. Third, in 2011, Microsoft cited the application for the '981 patent (the "'981 Patent Application") in an information disclosure statement submitted to the USPTO. Pl's 56.1 ¶ 40; Edelman Decl., Ex. J at 30-31. Kaufman says the claims in the '981 Patent Application were nearly identical to those issued in the '981 Patent. Pl's 56.1 ¶ 40. Fourth, in 2014, the USPTO cited the '981 Patent Application when it rejected a Microsoft patent application. Pl's 56.1 ¶ 40; Edelman Decl, Ex. J at 31. Outside counsel handled Microsoft's communications with the USPTO. Pl's 56.1 ¶ 41. None of the aforementioned Microsoft patent applications concerned Dynamic Data.

On April 18, 2016, Plaintiff filed the instant suit, bringing claims for direct infringement, inducing infringement, contributory infringement, and willful infringement.

## DISCUSSION

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court "is . . . required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 122 (2d Cir. 2004).

## I. Non-Infringement

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). This "requires a determination that every claim limitation or its equivalent be found in the accused device. Those determinations are questions of fact, and on summary judgment, the issue is whether there is no genuine issue of material fact regarding infringement." *In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1259 (Fed. Cir. 2007) (internal citations omitted); *see also Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998) ("[L]iteral infringement issue is properly decided upon summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device."). Defendant contends that Dynamic Data does not infringe the '981 Patent as a matter of law for two reasons. First, Defendant says, Dynamic Data does not "automatically" "scan said database and apply a body of rules." *See* '981 Patent at col. 377:2-37, 377:46-378:54. Second, not every allegedly infringing mode display (*i.e.*, create, retrieve, update, and delete) integrates each and every claimed process (*i.e.*, representing, navigating, and managing).

Issues of material fact preclude summary judgment on the question of whether Dynamic Data performs the prescribed steps automatically. The parties do not dispute the plain and ordinary meaning of automatic, but they do dispute what steps actually comprise the process of "scan[ning] said database and apply[ing] a body of rules," as well as whether those steps are "automatic[ ]" in Dynamic Data and related tools. These are questions of fact appropriately resolved by a jury.

5

Defendant's second argument for summary judgment on the issue of infringement also fails. The language of the asserted claims[3] does not compel the conclusion that each and every one of the four mode displays must integrate each and every one of the three processes. Rather, each of the four mode displays must integrate processes, which include representing, navigating, and managing. The question at hand is whether each mode display must integrate processes for representing, navigating, and managing, or whether, as Plaintiff insists, one function, for example, managing, may be absent from a particular mode, yet be present in others—whether "and" may be read as "and/or." The answer must arise from the context of the patent as a whole. For example, a managing functionality would be nonsensical and useless in a retrieve mode. That is why Dynamic Data does not include the managing functionality in its retrieve mode, nor do any purported embodiments.

The applicable precedent suggests that in these circumstances, "and" can mean "and/or." *See Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1361-63 (Fed. Cir. 2008) (finding district court properly construed "and" to mean "or" in order "to give proper meaning to the claim in light of the language and intrinsic evidence"); *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 376 F. Supp. 3d 369, 381 (S.D.N.Y. 2019) (interpreting "and" as disjunctive "and/or" after taking into account "the patent as a whole" and noting "it is not uncommon for courts to interpret the word 'and' in a patent claim to encompass the disjunctive when such an interpretation is necessary to accommodate the specification and preferred embodiments"). I cannot decide this issue as a matter of law prior to a trial developing

---

[3] Under limitation (c) of each independent claim, the invention "integrates into each said mode display processes for representing, navigating, and managing said relationships across tables." Pl's 56.1 ¶¶ 4-6; *see also* '981 Patent at col. 377:25-38, 378:9-21, 378:41-54.

the facts surrounding the context of the '981 Patent and Defendant's allegedly infringing processes.

## II. Embodiment

Defendant's motion for summary judgment on the issue of embodiment is denied as moot in light of my ruling at the final pretrial conference that Plaintiff may not introduce Schemalive at trial. Embodiment in the form of Plaintiff's own product is not an essential element of an infringement claim. *See Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 902 (Fed. Cir. 1984) ("A patentee need produce no commercial device. Infringement is determined by comparison with the patentee's claimed invention, not with its marketed product."). Furthermore, "[i]nfringement . . . is determined by comparing an accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with the properly and previously construed claims in suit." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985). If Schemalive were introduced at trial, the parties would have to spend excessive time explaining Schemalive and how it practices the '981 Patent. This would confuse the jury and risk creating a trial focused on comparing the allegedly infringing product to Schemalive instead of to the patent claims. *See* Fed. R. Evid. 403.

## III. Willfulness

"It is well-settled that knowledge of the non-infringer's patent is a necessary element to a claim of willful infringement." *Olaf Sööt Design, LLC v. Daktronics, Inc.*, 325 F. Supp. 3d 456, 461 (S.D.N.Y. 2018); *see also Verint Sys. Inc. v. Red Box Recorders Ltd.*, No. 14-cv-5403, 2016 WL 7177844, at *2 (S.D.N.Y. Dec. 7, 2016) ("For a finding of willful or induced infringement, the law requires that a defendant have had actual knowledge of the patents at

issue."). Summary judgment is appropriate on a willful infringement claim "[i]f Defendants can point to an absence of record evidence concerning its knowledge of the [patent-in-suit] and its claims." *Olaf Sööt Design*, 325 F. Supp. 3d at 461. Nothing in the record establishes Microsoft's pre-suit knowledge of the '981 Patent.

Plaintiff points to evidence showing that the '981 Patent Application and Kaufman publications for related technologies were cited in communications between Microsoft and patent authorities. However, this is insufficient as a matter of law. Knowledge of patent applications, even applications for the patent at issue, do not establish knowledge of the patent. *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985); *Verint Sys. Inc.*, 2016 WL 7177844, at *2-3. In *Verint Systems*, the plaintiff provided evidence that the defendant received knowledge of the patent application after the actual patent had issued. 2016 WL 7177844, at *2. That evidence, combined with evidence that the defendant looked into plaintiff's patents that were not at issue in the suit, could not "support an inference that [the defendant] knew that the particular patents at issue on [the] motion had in fact issued." *Id.* Thus, the Court granted the defendant's motion for summary judgment on the willful infringement claim. *Id.* at 2-3.

Plaintiff also argues that the claim of willful infringement should survive summary judgment because the filing of the present suit gave Defendant actual knowledge of the '981 Patent. Plaintiff's theory is without merit, even if another district court has seemingly endorsed it. *See Huawei Techns. Co. Ltd. v. T-Mobile US, Inc.*, No. 16-cv-00052, 2017 WL 1129951, at *4 (E.D. Tex. Feb. 21, 2017). It is not the law in this district. *See Verint*, 2016 WL 7177844, at *2-3 (granting summary judgment where "[t]here is no direct evidence in the record . . . that [the defendant] had *pre-suit* knowledge that the [patents-in-suit] had issued" (emphasis

8

added)). Plaintiff fails to cite any ruling by the Federal Court of Appeals that supports his proposition.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in part and denied in part. The motion is granted insofar as the claim for willful infringement is dismissed. The motion is denied in all other respects, and trial will proceed as scheduled on the remaining claims. The Clerk is directed to terminate the open motion (ECF No. 111).

SO ORDERED.

Dated: New York, New York
January 22, 2020

ALVIN K. HELLERSTEIN
United States District Judge