UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
:
MICHAEL PHILIP KAUFMAN,                          :     **ORDER DENYING MOTION**
:     **FOR JUDGMENT OF LAW**
                              Plaintiff,         :     **AND FOR A NEW TRIAL**
:
   -against-                                     :     16 Civ. 2880 (AKH)
:
MICROSOFT CORPORATION                            :
:
                              Defendant.         :
:
-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Following trial, a jury reached a verdict that Defendant Microsoft Corporation's ("Defendant" or "Microsoft") computer application, Dynamic Data, infringes U.S. Patent No. 7,885,981 (the "'981 Patent"), which is owned by Plaintiff Michael Kaufman ("Plaintiff" or "Kaufman"). The jury found that Kaufman was entitled to $7 million in damages. Microsoft moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or for a new trial pursuant to Federal Rule of Civil Procedure 59. As detailed further herein, Microsoft's motion is denied.

## BACKGROUND

       I assume familiarity with the factual and procedural history of this case. To summarize briefly, Kaufman's '981 Patent issued in 2011. *See* Pl. Ex.[1] 1 ('981 Patent). The '981 Patent describes an invention that helps users interact with relational computer databases. "It is an object of the invention to provide a complete and fully functional user interface (UI) for any arbitrarily complex or large database schema, without any custom software programming."

---

[1] "Pl. Ex." refers to a trial exhibit offered by Plaintiff.

1

'981 Patent at 3:8-12. The '981 Patent contains six claims. Claims 1 through 3 and 5 are at issue here.[2] A key feature of the claimed invention is the ability to "automatically generat[e] an end-user interface for working with the data within a relational database." '981 Patent at 377:3-4, 377:46-48, 378:23-25. It works with relational databases of "any arbitrary size or complexity." '981 Patent at 377:11-12, 377:54-55, 378:29-31. The invention also claims "a user interface paradigm comprising a set of modes for interacting with a given database table, said modes comprising create, retrieve, update and delete, and a corresponding display format for each mode," "integrat[ing] into each said mode display processes for representing, navigating, and managing said relationships across tables." '981 Patent at 377:14-19, 377:25-38, 377:58-378:4, 378:9-21, 378:32-36, 378:41-54.

In 2008, Microsoft released Dynamic Data. The Dynamic Data application is available through Microsoft's software Visual Studio. Microsoft also had an older program, Microsoft Access 2000, that performed some similar functions. Kaufman contends that Dynamic Data, and more specifically the scaffolding function within Dynamic Data, infringes his '981 Patent.

Kaufman filed this suit on April 18, 2016, bringing claims for direct infringement, induced infringement, contributory infringement, and willful infringement, of the '981 Patent. I issued a claim construction order following a *Markman* hearing. ECF No. 69. I dismissed the willful infringement claim on summary judgment and denied Defendant's motions for summary judgment in all other respects. ECF Nos. 102, 166.

---

[2] Plaintiff never alleged infringement of Claim 6. At trial, I also granted Defendant's motion for judgment as a matter of law as to Claim 4 after Plaintiff failed to present evidence of certain limitations of the claim. Trial Tr. at 979:23-980:10, 982:8-9.

At trial, Kaufman described how he developed his invention and how it functions as a user-friendly way for interacting with raw, complex databases and automatically adjusting to changes in underlying database schema.  *See* Trial Tr.[3] at 134:14-144:9.  Plaintiff's expert witness, Dr. Dennis Shasha, walked through a demonstration of Dynamic Data and related each step to the claims of the '981 Patent.  Trial Tr. at 287:5-348:14.  As to damages, Plaintiff solicited the expert testimony of Brian Dies.  Dies, relying in part on the costs of similar products, estimated the royalty rate Microsoft would have paid Kaufman had the parties negotiated a license at the time the '981 Patent issued.  Trial Tr. at 777:19-793:1.  He also estimated the number of users of Dynamic Data.  Trial Tr. at 766:5-777:18.  From these variables, he arrived at the lump sum royalty payment Kaufman should receive.

The jury delivered a verdict in Kaufman's favor, finding Kaufman proved that Dynamic Data infringed the relevant claims of the '981 Patent, and Microsoft failed to prove that the relevant claims were invalid.  Ct. Ex.[4] 6.  After returning its verdict as to liability, the jury deliberated on damages.  The jury found that Plaintiff was entitled to $7 million in damages for Defendant's infringement.  Ct. Ex. 8.

## DISCUSSION

A court may grant judgment as a matter of law after an issue has been fully presented to the jury if the court finds "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).  Where, as here, the court denies a motion for judgment as a matter of law before the case is submitted to the jury, the movant may renew its motion pursuant to Rule 50(b).  "[T]he movant must show that the evidence, when viewed most favorably to the non-movant, was insufficient to permit a

---

[3] "Trial Tr." refers to the trial transcript, ECF Nos. 173, 177, 179, 181, 183, 185, 187, 207.
[4] "Ct. Ex." refers to a court trial exhibit.

3

reasonable juror to have found in the non-movant's favor." *Conte v. Emmons*, 895 F.3d 168, 171 (2d Cir. 2018); *see also Samuels v. Air Transport Local 504*, 992 F.2d 12, 16 (2d Cir. 1993) ("trial court must view the evidence in a light most favorable to the nonmovant and grant that party every reasonable inference that the jury might have drawn in its favor"). "The standard is a high one, met only in 'rare occasions.'" *Conte*, 895 F.3d at 171 (quoting *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1536 (2d Cir. 1992)).

Under Rule 59, a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A motion for a new trial should be granted when, in the opinion of the district court, 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" *Song v. Ives Labs., Inc.*, 957 F.2d 1041 (2d Cir. 1992) (quoting *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir.1988)). The Rule 59 standard is "a less stringent standard than Rule 50 in two significant respects: (1) a new trial under Rule 59(a) 'may be granted even if there is substantial evidence supporting the jury's verdict,' and (2) 'a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'" *Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133-34 (2d Cir.1998)).

Defendant contends that it is entitled to judgment as a matter of law, or in the alternative, to a new trial, as to each key facet of the case: that Dynamic Data does not infringe the '981 Patent, that the '981 Patent is invalid, and that Plaintiff failed to prove damages. I address each argument in turn.

I. **Infringement**

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). According to Defendant, several limitations in the '981 Patent are not present in Dynamic Data.

First, Defendant argues that Dynamic Data does not "automatically" perform the claimed steps. I defined "automatic," and the parties agreed, as meaning, "[n]o separate developer input is required." ECF No. 171 at 19:12-20. Defendant, arguing against infringement, contended that there were multiple steps in Dynamic Data that require manual user input. For example, before Dynamic Data can "scan [a] database," '981 Patent at 377:20, the user must identify the database that should be scanned and click through multiple dialogue boxes, Def. Ex. BZ. Then, after scanning, the user has to modify five lines of code and click a button before Dynamic Data "generat[es] an end-user interface." '981 Patent at 377:3; Trial Tr. at 312:15-320:20.

However, a jury could reasonably conclude that these were preparatory and follow-up steps, and not a replacement for the automatic steps claimed in the '981 Patent. Put another way, a developer conducts these manual steps during set-up. Then, the application automatically scans the database. Then, a developer follows up with additional manual steps before the application performs the next automatic function. This is exactly what Dr. Shasha explained. Trial Tr. at 292:4-9, 293:6-20 (explaining how, once user performs preparatory steps and clicks "Finish," application automatically scans database and generates files). The jury, by its verdict, accepted plaintiff's explanations, and rejected defendant's. I cannot say that the jury "reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" *Song v. Ives*

*Labs., Inc.*, 957 F.2d 1041 (2d Cir. 1992) (quoting *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir.1988)).

Defendant argues that the issue is one of a claim construction, for the court alone, and not for the jury. But the application of the definition to Defendant's usage is an issue of fact, not a definition. The limitation of the patent claim was defined by the Court, and it was up to the jury to determine whether the allegedly infringing product was carrying out the steps as claimed. *See SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) ("The claimed invention must first be defined, a legal question of claim interpretation. Second, the trier of fact must determine whether the claims, as properly interpreted, cover the accused device or process.").

Defendant's next argument is that Dynamic Data does not infringe because it lacks a display format for the delete mode. All relevant claims of the '981 Patent require "create, retrieve, update and delete" ("CRUD") modes, "and a corresponding display format for each mode." '981 Patent at 377:17-19, 378:34-36. The delete mode does not have its own display format, *i.e.*, a display format that performs only delete and not any of the other CRUD functions. Trial Tr. at 207:14-20. Instead, the delete function is an option in a display format that also allows a retrieve function. The absence of a one-to-one correspondence between each mode and its own display format is not a limitation of the patent claim. Nothing in the plain and ordinary meaning of "corresponding," nor in the '981 Patent's prosecution history, suggests exclusivity of one mode per display format. It merely suggests that each mode should be available in some display format. *Cf., St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*, 412 F. App'x 270, 273 (Fed. Cir. 2011) (discussing claim language requiring that each data format code "corresponds *respectively*" to data formats (emphasis added)).

6

Next, Defendant returns again to a dispute that has come up at multiple stages of this case, whether the conjunctive, "and", may allow the possibility of the disjunctive, "and/or," depending on the context of its use. I held, at the *Markman* hearing, that I could not define the term except in the context of how the invention described in the claim would be used. The '981 Patent states that the invention "integrates into each [CRUD] mode display processes for representing, navigating, and managing said relationships across tables." '981 Patent at 377:25-38, 378:41-54. But Dynamic Data does not integrate all three modes in each mode display. For example, the retrieve mode integrates processes for representing and navigating but not managing. The managing function requires a different display. Trial Tr. at 334:21-335:5. As the trial evidence showed, each CRUD mode display integrates processes for representing, navigating, *and/or* managing.[5] I hold that this is sufficient; "and" can be read as "and/or" in the "larger context of th[e] patent," *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1361-63 (Fed. Cir. 2008). The evidence of this case favors such a disjunctive reading of the claim. There are instances where integration of a particular process into a particular mode makes less sense than using a second display. Trial Tr. at 167:22-168:22, 335:1-17; *World Class Technology Corp. v. Ormco Corp.*, 769 F.3d 1120, 1123 (Fed. Cir. 2014) ("[w]e generally give words of a claim their ordinary meaning in the context of the claim and the whole patent document."); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (the claim term is read "in the context of the entire patent, including the specification").

Next, Defendant argues Dynamic Data does not work with relational databases of "any arbitrary size or complexity." '981 Patent at 377:11-12, 378:29-31. Plaintiff's expert, Dr.

---

[5] Defendant's contention, which it appears to have abandoned in its reply, that Plaintiff failed to show any of the three processes for update or delete mode is incorrect. *See* Def. Ex. ET (showing processes for update mode); Def. Ex. EU (showing processes for representing in delete mode).

Shasha, explaining how Dynamic Data worked, illustrated his testimony using a sample database that was "[n]ot particularly" complex. Trial Tr. at 367:24-368:12. However, Dr. Shasha also testified that Dynamic Data can work with databases of any arbitrary size and complexity because "there's nothing in [Dynamic Data] that would be limited by the number of tables or relationships." Trial Tr. at 321:19-325:10. He further explained that this is possible because "the software that's being invoked only looks at the current table and its neighbors, and so, therefore, there is no limit on the number of tables that could be handled by the software there." *Id.* Defendant argues that Dr. Shasha should have conducted multiple demonstrations with multiple complex databases, but the jury found his testimony credible, and that suffices to sustain the verdict. *See Buchwald v. Renco Grp.*, 539 B.R. 31, 43-44 (S.D.N.Y. 2015) (discussing court's limited role in "battle of the experts" scenarios).

Next, Defendant argues that it is entitled to judgment as a matter of law on infringement of Claims 1-3 because Plaintiff failed to produce evidence that any user carried out the claimed steps in the United States. Notably, the allegedly infringing scaffolding function in Dynamic Data is disabled by default (for data privacy reasons) and has to be turned on by a user. Trial Tr. at 358:25-359:14, 468:17-469:4. Thus, one cannot assume that every use of Dynamic Data was infringing. The parties stipulated that Dynamic Data had hundreds of unique users per month in the United States between August 2017 and July 2018. While not all of these users would have necessarily enabled the scaffolding function, jurors could reasonably infer that at least some would have, especially since using Dynamic Data without scaffolding requires more manual work. Trial Tr. at 479:13-20; *see Samuels v. Air Transport Local 504*, 992 F.2d 12, 16 (2d Cir. 1993) (requiring that trial court grant non-moving party on Rule 50 motion "every reasonable inference that the jury might have drawn in its favor").

8

Finally, Defendant argues that Plaintiff failed to prove infringement of Claim 5. Claim 5 requires "[a] computer-readable medium containing a set of instructions for a general purpose computer, for automatically generating an end-user interface for working with data within a relational database." '981 Patent at 378:22-25.  This computer-readable medium is the CD that Microsoft sells and that contains the infringing product.  Microsoft contends that Claim 5 is not satisfied because the product that Microsoft offers does not come with a preconfigured relational database.  However, this misses the point.  Claim 5 requires a computer-readable medium with a set of instructions for performing prescribed steps with any database of certain qualities.  It should not be read to require that the infringing product provides the actual database. The claimed invention is a tool for working with a variety of databases.  It would be nonsensical to require that the tool also provide the database.   Microsoft also argues that since scaffolding was disabled by default and had to be turned on by the user, Dynamic Data was not preconfigured to perform the infringing function.  However, the default setting for scaffolding does not change the fact that the "instructions" for performing the claimed steps are available within the application.

In summary, there was substantial evidence to support the jury's verdict that defendant's Dynamic Data infringed the '981 patent.

## II. Invalidity

Defendant has the burden to prove by clear and convincing evidence that the '981 Patent is invalid. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011).  The jury found that Defendant had failed to satisfy its burden.  Defendant tried to prove at trial that the '981 Patent was anticipated by prior art, and was obvious in relation to the prior art.   Defenses contesting

9

validity are viewed by the perspective of a person of ordinary skill in the art. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).

The jury found that the '981 Patent was valid, and that Defendant failed in its burden to prove by clear and convincing evidence that the '981 Patent lacked an adequate written description and was anticipated or obvious in light of prior art. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011). Defendant argues that Plaintiff failed to present expert evidence of such perspective, and that its own expert was not allowed to testify fully. Test. David McGoveran, Trial Tr. at 508:25-511:12.

Defendant's argument has no merit. Defendant elicited full testimony from Mr. McGoveran ranging over 42 pages of transcript on the issue of infringement Trial Tr. 512:3-518:3; 522:4-538:25; 555:13-575:21, and 38 pages more on the issue of invalidity. Trial Tr. 507:11-5:10:9, 575:22-610:24. Mr. McGoveran compared Microsoft's accused product, Dynamic Data, element by element with the claims of the '981 patent, and the '981 patent, claim by claim, with the alleged anticipated product, Microsoft Access 2000. As McGoveran testified, the jury had the claims of the '981 patent before them, and followed McGoveran's answers, line by line. Indeed, McGoveran told the jury the answers to the very question that Defendant claims was blocked, who qualifies as a person of ordinary skill in the art. He answered that an expert like him and Dr. Shasha, Plaintiff's expert, qualify, as does a person who creates or uses databases. Trial Tr. 509: 3-7. Defendant made a proffer as to that which he claimed he was not allowed to ask, and I allowed Defendant to ask the question he claims was blocked. Trial Tr. 539:2 – 540:2, Id. 654:9-23. My ruling did not result in a miscarriage of justices or otherwise require a new trial.

10

To satisfy the written description requirement, a patent applicant must "convey with reasonable clarity to those skilled in the art that, as of the filing date, he or she was in possession *of the invention.* The invention, for purposes of the 'written description' inquiry, is *whatever is now claimed.*" *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).[6] My ruling as to the meaning of "integrates into each [CRUD] mode display processes for representing, navigating, and managing said relationships across tables" disposes of part of Defendant's written description argument. *See supra* Part I; '981 Patent at 377:25-38, 378:41-54. Defendant highlights that the retrieve mode described in the specification does not integrate processes for managing. Just as I held it is sufficient that Dynamic Data integrates into each CRUD mode display processes for at least one of representing, navigating, and managing, it is sufficient that the '981 Patent's specification does the same. The jury also had a sufficient basis for finding Defendant failed to prove the delete mode was not adequately described. The '981 Patent's specification describes a delete "capability" rather than a delete "mode," '981 Patent at 5:63-64, but "a prior application need not contain precisely the same words as are found in the asserted claims," *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008). The specification includes further details on how a delete capability is incorporated. '981 Patent at 5:63-6:3.

Microsoft next argues that, based on Microsoft Access 2000 as prior art, Plaintiff's invention was anticipated or obvious. "A prior art reference anticipates a patent claim under 35 U.S.C. § 102(b) if it discloses every claim limitation." In re Montgomery, 677 F.3d

---

[6] Defendant also argues that my instructions to the jury conflated the written description and enablement defenses. *See* Trial Tr. at 1122:2-1123:3. Microsoft failed to preserve this argument when it failed to object at trial. *Springer v. Cedro*, 894 F. Supp .2d 474, 482 (S.D.N.Y. 2012). Microsoft's earlier objection was to an earlier version of the jury instructions. Trial Tr. at 1118:2-1119:6, 1120:7-11. The instruction gave the jury "adequate legal guidance to reach a rational decision." *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62 (2d Cir. 2002).

1375, 1379 (Fed. Cir. 2012). A patent is also invalid for obviousness if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. This inquiry takes into account "the scope and content of the prior art," "differences between the prior art and the claims at issue," and "the level of ordinary skill in the pertinent art." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966). "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc." are also relevant. *Id.*

The trial revealed numerous instances where jurors could infer distinctions between Access 2000 and the invention claimed in the '981 Patent. For example, jurors could have concluded that the lookup function in Access 2000, which a developer has to manually create, is not an "automatic" form of managing relationships across tables as taught by the '981 Patent. Trial Tr. at 448:10-449:4. Additionally, Kaufman described the shortcomings of Access 2000 and how shortcomings of the prior art drove him toward his invention. Trial Tr. at 112:6-113:15. Defendant bore the burden of proving invalidity, and the jury's finding that it failed to meet its burden was not unreasonable in light of the evidence at trial.

Defendant also argues claim 5 is invalid due to indefiniteness under 35 U.S.C. 112, ¶ 6, which applies to means-plus-function limitations.[7] "Construction of a means-plus-function limitation includes two steps." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012). "First, the court must determine the claimed function. Second, the court must identify the

---

[7] Because of the timing of the '981 Patent, it is subject to the version of 35 U.S.C. 112, ¶ 6 that predates the America Invents Act. That version of the statute states: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

corresponding structure in the written description of the patent that performs the function." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006). At the first step, and "[t]o determine whether § 112, para. 6 applies to a claim limitation, our precedent has long recognized the importance of the presence or absence of the word 'means.'" *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). Where the word "means" is absent, there is a "rebuttable presumption" that the means-plus function provision does not apply. *Id.* Still, the word "means" is not dispositive, as the "essential inquiry" is "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.*

After determining that claims are subject to means-plus-function construction, "the court must determine what structure, if any, disclosed in the specification corresponds to the claimed function." *Id.* at 1351. "If the patentee fails to disclose adequate corresponding structure, the claim is indefinite." *Id.* at 1352. "In the case of computer-implemented functions, [courts] require that the specification disclose an algorithm for performing the claimed function." *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1349 (Fed. Cir. 2016) (internal quotation marks omitted)).

Claim 5 does not use the word "means," and Microsoft has not overcome the rebuttable presumption that the claim therefore is not subject to 35 U.S.C. 112, ¶ 6. The claim uses the word "routines" but also extensively details the structural operations comprising those routines. Microsoft has not presented evidence on "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson*, 792 F.3d 1339 at 1348. Finally, even if claim 5 is subject to 35 U.S.C. 112, ¶ 6, the specification discloses adequate structure, including for delete mode. An

algorithm can be expressed in "any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) (internal citations omitted). While the specification in the '981 Patent does not include code or a diagram for delete mode, it does explain in prose how to implement it. '981 Patent at 5:63-6:3.

## III.   Damages

Defendant argues that Plaintiff is not entitled to damages accruing before the complaint because Plaintiff failed to mark "patented" in the product he advertised online. *See* 35 U.S.C. § 287(a). That issue was fully addressed in my ruling after the close of evidence, and Defendant presents no basis for disturbing that ruling. As I already held, the website was not an offer for sale, nor was it a patented article. As such, marking was not required under Section 287(a).

Defendant also contends that Plaintiff presented inadequate evidence of damages. These arguments fail. As already discussed, Plaintiff provided sufficient evidence of infringement of Claim 5, which is the basis for damages. To arrive at a reasonable royalty the parties would have negotiated in 2011, Plaintiff's damages expert, Brian Dies, estimated a rate based on comparable products and estimated the number of users the parties would have anticipated based on analysis of Google Trends. *See* Trial Tr. at 669:18-677:1, 680:3-686:16 (Dr. Shasha's discussion of the comparability of products used in Dies's analysis). Dies isolated the rate that would be attributable to the infringing function. *See. e.g.*, Trial Tr. at 785:13-23. Further, in applying discount rates, he took into account that the parties might expect a decline in users over time. Trial Tr. at 794:24-795:4. Defendant may take issue with these methods of estimation, but there was sufficient grounding in the evidence to permit the jury to make

reasonable inferences rather than rely on speculation. *See Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co., Harris Press & Shear Div.*, 895 F.2d 1403 (Fed. Cir. 1990) ("When a 'reasonable royalty' is the measure [of damages], the amount may again be considered a factual inference from the evidence, yet there is room for exercise of a common-sense estimation of what the evidence shows would be a 'reasonable' award."). The very nature of a hypothetical negotiation is that it will require some projection and inference.

## CONCLUSION

Defendant's motion is denied. The Clerk is directed to close the open motion, ECF No. 196.

SO ORDERED.

Dated:   January 25, 2021                _____/s/_____
         New York, New York              ALVIN K. HELLERSTEIN
                                         United States District Judge